UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DORSEY R. GARDNER and JOHN FRANCIS
O'BRIEN, as trustees of the Dorsey R. Gardner
2002 Trust,

                    Plaintiffs,

    -against-

THE MAJOR AUTOMOTIVE COMPANIES,
INC. and BRUCE BENDELL,

                    Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 11-CV-1664 (FB)

*Appearances:*

*For the Plaintiff:*
MARC A. LEBOWITZ, ESQ.
Lebowtiz Law Office, LLC
275 Madison Avenue
New York, NY 10016

MARK B. ROSEN, ESQ.
Pierce Atwood LLP
One New Hampshire Avenue, Suite 350
Portsmouth, NH 03801

*For the Defendant*:
ROBERT F. BRODEGAARD, ESQ.
Brodegaard & Associates LLC
110 E 59th Street, 23rd Floor
New York, NY 10022

**BLOCK, Senior District Judge:**

       This case arises out of a reverse stock split through which defendant Bruce Bendell became the sole shareholder of The Major Automotive Companies, Inc. ("Major"). Plaintiffs assert claims for breach of fiduciary duty and violation of § 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 14 U.S.C. 78n(a), and Securities and Exchange Commission ("SEC") Rule 14a–9 promulgated thereunder. The complaint also includes a negligent misrepresentation claim, but plaintiffs abandoned it in open court during oral argument on August 21, 2012. The Court's jurisdiction is founded on both the Exchange Act claim and diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332(a).

1

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]  For the reasons stated below, that motion is granted in part and denied in part.

## I.

For purposes of this motion, the Court accepts the complaint's allegations as true and draws all inferences in plaintiffs' favor.  *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).  The Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).  The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).  The following facts are presented accordingly.

Plaintiffs Dorsey R. Gardner and John Francis O'Brien are trustees of the Dorsey R. Gardner 2002 Trust ("the Trust").  At the time of the relevant transaction, the Trust owned common stock in Major, a Nevada corporation with its principal place of business in Long Island City, New York.  Major's stock was publicly traded until early 2006, when the company's Board of Directors and shareholders approved a "Going

---

[1] Defendants move to dismiss the complaint pursuant to either Federal Rule of Civil Procedure 12(b)(6) or 12(c).  As defendants have already filed an answer, the motion is properly construed as falling under 12(c).  *See* Fed. R. Civ. Pro. 12(b).

2

Private" transaction. Bendell – who owned 50.3% of Major's outstanding common stock – was Chairman of the Board, Chief Executive Officer, and Acting Chief Financial Officer.[2]

On December 30, 2010, Major circulated a Notice of Special Meeting of Stockholders to consider a 1-for-3,000,000 reverse stock split which would render Bendell the sole shareholder. All other shareholders would receive $0.44 per pre-split share. The accompanying proxy statement explained that because Bendell intended to vote in favor of the transaction, its approval was assured, but that a vote was in Major's interest "because if a majority of the unaffiliated stockholders . . . were to approve the Transaction, the Company could, in the event that the Transaction is judicially challenged, rely on that vote to show the fairness of the Transaction." Proxy Statement at 5. The proxy statement acknowledged Bendell's conflict of interest, although it failed to disclose his domination of the Board, which recommended a vote in favor of the proposal. Stated reasons for the transaction were to "reduce the number of stockholders to one" and decrease expenses by no longer having to service stockholders with small positions and manage shareholder accounts and relations. Compl. ¶ 17. Information about dissenters' rights and the text of Nevada's dissenters' rights statute were included with the notice and proxy statement.

The crux of plaintiffs' complaint is that Bendell abused his fiduciary authority to obtain and approve an unfairly low price per share. The price was based on a "Fairness Opinion" by Empire Valuation Consultants, LLC ("Empire"), dated April 15, 2010, and annexed to the proxy statement. Empire relied on Major's tax returns for 2005-2008 and financial statements through June 2009. The opinion noted that Empire requested more

---

[2] Contradictorily, the complaint alleges that Bendell was the "sole member of the Board," but makes repeated reference to "other Board members." Compl. ¶¶ 10, 37-41.

3

recent financial information, but "[m]anagement stated that none of this information was available." Fairness opinion, Annex C to Proxy at 4. Plaintiffs allege that Major had recent performance data and financial statements, but chose not to disclose it to Empire. They further allege that Empire assigned an inappropriately steep marketability discount to the share value.

II.

**A. The Exchange Act claim**

Plaintiffs allege that defendants made false statements regarding the fairness of the transaction in the proxy statement, in violation of § 14(a) of the Exchange Act and its regulations. That section only applies to registered securities. *See* 15 U.S.C. §§ 78n(a)(1) ("It shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered pursuant to section 78l of this title."), § 78l (establishing registration requirements); *see also Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 545 (2d Cir. 1973) ("The claimed violation of the proxy rules must fail because proxies were not solicited 'in respect of any security . . . registered pursuant to section 12' of the Act.").

Plaintiffs do not contest that Major was not a registered security at the time defendants' allegedly violated the proxy solicitation regulations, but they attempt to come within the Exchange Act's purview by arguing that Major's common stock was registered at the time their shares were purchased and that defendants should therefore be held liable as though the stock had never been deregistered. This argument is unconvincing. Neither plaintiffs' brief nor the Court's own research yields any law in support of this

4

interpretation of § 14(a). Moreover, plaintiffs' theory is contrary to the statute's plain language; § 14(a) only governs conduct "in respect of any security . . . registered," 15 U.S.C. §§ 78n(a)(1), suggesting that once a security is deregistered, the statute's protections no longer apply. Thus, there is no liability under the Exchange Act and the claim is dismissed.

**B. The breach of fiduciary duty claim**

The complaint alleges that Bendell – as "[C]hairman of the Board, President, CEO and Acting CFO," Compl. ¶ 37 – and the other members of the Board (1) "breached their fiduciary duty of loyalty by withholding information concerning the financial condition of Major and the true value of Major's common stock in order to secure for Bendell and Major an artificially discounted purchase price," Compl. ¶ 38, and (2) "breached their duty of care by failing to inform themselves of reasonably available information concerning the financial condition of Major and the true value of Major's outstanding common shares, and by failing to consider any potential strategic alternatives," Compl. ¶ 39.

Under New York's choice-of-law rules, the law of Nevada – Major's state of incorporation – governs the claim. *See Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980). As the Nevada Supreme Court has succinctly explained, "the duty of care consists of an obligation to act on an informed basis; the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests." *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006).

5

Although Nevada courts have not directly addressed the scope of officer and director fiduciary obligations in a reverse stock split transaction where minority shareholders are cashed out, the parties assume in their submissions that the transaction should be evaluated under the same standard as a merger. The Court agrees that, for the purpose of discerning Bendell's fiduciary obligations, the situation is analogous. *See Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 460 (Del. Ch. 2011) ("When a controlling stockholder uses a reverse split to freeze out minority stockholders without any procedural protections, the transaction will be reviewed for entire fairness with the burden of proof on the defendant fiduciaries . . . . A reverse split under those circumstances is the 'functional equivalent' of a cash-out merger.").[3]

A minority shareholder may assert a direct claim that a "merger was accomplished through the wrongful conduct of majority shareholders, directors, or officers of the corporation and attempt to hold those individuals liable for monetary damages under theories of breach of fiduciary duty or loyalty." *Cohen v. Mirage Resorts*, 62 P.3d 720, 728 (Nev. 2003). The claim "must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price." *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1245 (Del. 1999); *see also Cohen*, 62 P.3d at 727 (Nev. 2003) (citing *Parnes* for the proposition that "[c]hallenges to the

---

[3] Because the Nevada courts frequently look to Delaware on open questions of corporate law, this Court will rely on Delaware law to predict how Nevada's courts would decide any issues it has not addressed. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008) ("Because the Nevada Supreme Court frequently looks to the Delaware Supreme Court and the Delaware Courts of Chancery as persuasive authorities on questions of corporation law, this Court often looks to those sources to predict how the Nevada Supreme Court would decide the question.").

validity of a merger based on fraud usually encompass either or both of the following: (1) lack of fair dealing or (2) lack of fair price").

Allegations regarding lack of fair dealing or fair price "[b]oth involve corporate directors' general duties to make independent, fully informed decisions when recommending a merger and to fully disclose material information to the shareholders before a vote is taken on a proposed merger. They also can involve allegations that majority shareholders breached their limited fiduciary duties to minority shareholders." *Cohen*, 62 P.3d at 727. "Lack of fair dealing involves allegations that the board of directors did not make an independent, informed decision to recommend approval of the [transaction], or that the majority shareholders approved the [transaction] at the expense of the minority shareholders." *Id.* Such cases often allege conflicts of interest, improper compensation, and failure to provide shareholders with material information regarding the transaction. *Id.* at 728. Lack of fair price involves "similar allegations plus claims that the price per share was deliberately undervalued." *Id.* Notably, "it can also include negligent conduct" relating to the valuation. *Id.*

Defendants argue that plaintiffs have failed to allege sufficient facts to state a claim, but the complaint's allegations are more than adequate. Despite Bendell's plain personal interest in the transaction, Major did not create a special committee of disinterested members to evaluate its fairness. The proxy statement failed to disclose that Bendell was the sole member of the Board or dominated the Board – an important point since the statement noted that the Board had "unanimously determined that the Transaction is fair to, and in the best interests of, the Company and its stockholders" and

7

recommended that shareholders vote in favor of the transaction. Moreover, management failed to provide Empire with recent financial information (even when Empire requested it) and failed to consider that information when weighing whether to endorse the Fairness Opinion. This omission was particularly notable because the most recent financials Empire saw were from June 2009 and, as Bendell knew, Major's financial position was significantly stronger by the time the proxy statement was disseminated in December 2010.

Contrary to defendants' contentions, plaintiffs' failure to exercise their rights under Nevada's dissenters' rights statute is not grounds for dismissal. Under the statute, minority shareholders were entitled to dissent from the transaction and initiate an appraisal proceeding to determine fair value of their shares. *See* Nev. Rev. Stat. § 92A.380(1). The trust did not exercise its appraisal rights and therefore cannot challenge the transaction unless it was "unlawful or fraudulent." Nev. Rev. Stat. § 92A.380(2); *see also Cohen*, 62 P.3d at 724 ("NRS 92A.380 does not apply when fraudulent or unlawful conduct relating to the approval of a merger is alleged."). In this context, however, the term "fraudulent" is not limited to common law fraud, but rather "encompasses a variety of acts involving breach of fiduciary duties imposed upon corporate officers, directors, or majority shareholders." *Cohen*, 62 P.3d at 729. Shareholders who fail to exercise their dissenters' rights "are not entitled to maintain a court action based solely on a theory that the price paid for their shares pursuant to the merger was less than the fair value of the shares," but they are "still entitled to seek damages if the merger was based upon fraud or misrepresentation." *Id.* at 730. Because plaintiffs are challenging Bendell's exercise of his fiduciary duties, not merely the share price, their claim is viable.

8

Finally, defendants' assertion at oral argument that dismissal is appropriate due to the direct, rather than derivative, nature of the suit is unavailing. "A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation." *Cohen*, 62 P.3d at 732. Former shareholders lack standing to bring such claims. *Id.* In contrast, former shareholders may bring direct claims, which seek "relief for direct injuries that are independent of any injury suffered by the corporation." *Id.* As the Nevada Supreme Court explained in *Cohen*, a claim challenging "the validity of a merger as a result of wrongful conduct on the part of majority shareholders or directors is properly classified as an individual or direct claim. The shareholder has lost unique personal property—his or her interest in a specific corporation." *Id.; see also Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1245 (Del. 1999) ("A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated."). Plaintiffs' breach of fiduciary duty claim therefore survives the motion to dismiss.

### III.

Accordingly, the defendants' motion to dismiss is granted with respect to plaintiffs' Exchange Act claim and denied with respect to plaintiffs' breach of fiduciary duty claim.

**SO ORDERED.**  /s/ Judge Frederic Block
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 21, 2012