# BRODEGAARD & ASSOCIATES LLC

ATTORNEYS AND COUNSELORS

ROBERT F. BRODEGAARD, ESQ.
EMAIL: rfb@brodegaardlaw.com
SKYPE:  robert.f.brodegaard

110 EAST 59TH STREET
23RD FLOOR
NEW YORK, NEW YORK 10022
(212) 813-0620
FAX (646) 355-1920
www.brodegaardlaw.com

June 3, 2013

**VIA ECF**

Hon. Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Gardner, et al. v. The Major Automotive Companies, Inc., et al.*
             No. 11-CV-1664 (FB)(VMS)

Dear Judge Scanlon:

      We represent The Major Automotive Companies, Inc. ("Major Automotive") and Bruce Bendell ("Bendell") (collectively "Major" or "Defendants") in the above-referenced action. Please accept this letter-memorandum in lieu of a more formal opposition in response to Plaintiffs' Motion for Leave to File a First Amended Complaint.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT SHOULD BE DENIED BECAUSE THE PROPOSED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND, THEREFORE, WOULD BE FUTILE

      Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave to amend a complaint "shall be freely given when justice so requires"; however, the federal courts have uniformly interpreted it to permit such amendments only if:

      (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile.

*E*Trade Financial Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) (internal citations omitted);  *Forman v. Davis*, 371 U.S. 178, 182 (1962).

First, as explained in detail below, Plaintiffs' First Amended Complaint in its present form will not survive a motion to dismiss for failure to state a claim upon which relief can be granted with respect to at least two out of six proposed new defendants.[1]

Second, Defendants respectfully submit that such an amendment will be futile for the reasons set forth in Defendants' motion for reconsideration of that part of this Court's Order, in which it allowed Plaintiffs to proceed on their claim of breach of fiduciary duties—which motion is still pending before this Court.

### I. **Plaintiffs' Proposed First Amended Complaint Fails to State a Cause of Action Upon Which Relief Can Be Granted With Respect to At Least Two out of Six Proposed Defendants – Eric L. Keltz and Harold Bendell.**

In their proposed first amended complaint, Plaintiffs' seek to add Harold Bendell, Eric L. Keltz, Steven Hornstock, Jeffrey M. Weiner, Alan Pearson, and David Edelstein as additional defendants. However, in so doing, Plaintiffs apparently forgot a basis for their allegations, using the "kitchen sink" approach – sue and serve everyone, regardless of the merits.[2]

Once again, the only Plaintiffs' claim that survived—for the moment—Defendants' motion for judgment on the pleadings and/or to dismiss for failure to state a claim upon which relief can be granted is a breach of fiduciary duty.

The gist of Plaintiffs' allegations pertinent to this claim—in its present form or in the proposed amended complaint—is that the members of Major's Board of Directors breached their fiduciary duties when, in anticipation of the January 25, 2011 Transaction:

> (a) the Board distributed a proxy which did not elaborate in satisfactory detail to Plaintiffs the purpose of the Transaction, e.g., specific costs were sought to be eliminated (see proposed Am. Compl. ¶¶ 22-26);

---

[1]/ This is not the first time Plaintiffs attempt to assert frivolous claims in this litigation. On August 21, 2012, this Court granted Defendants' motion to dismiss Plaintiffs' claim alleging violations of the Securities Exchange Act of 1934 and rules thereunder, correctly finding that Major's stock did not even fall within the ambit of the statute. In other words, that part of Plaintiffs' complaint was nothing but frivolous.
    Similarly, at the oral argument that day, Plaintiffs' counsel withdrew in open court Plaintiffs' claim of negligent misrepresentation, essentially conceding that Plaintiffs could not show that they relied in any way on the alleged misrepresentations.
    The only remaining Plaintiffs' claim of breach of fiduciary duties under Nevada law is subject of Defendants' motion for reconsideration, which is still pending before this Court.

[2]/ In fact, in their recent correspondence addressed to non-parties HB Automotive Group, Inc., Bronx Automotive Group, Inc., and Toyota of the Bronx—upon whom Plaintiffs' served their abusive third-party discovery requests, which are subject of the pending before this Court motions to quash—Plaintiffs wrote to Harold Bendell, as a principal of the subpoenaed non-parties, that there is a "pending motion to amend to add you and the HB Entities as defendants." See Dkt. No. 76-2.

    (b)  while disclosing the fact that Bruce Bendell was a controlling shareholder and had interests in the Transaction, the Board did not create a special committee to evaluate the fairness of the Transaction (see proposed Am. Compl. ¶¶ 27-29, 42);

    (c)  the Board was allegedly dominated by Bruce Bendell (see proposed Am. Compl. ¶¶ 30-31, 34);

    (d)  the Board allegedly failed to consider other alternatives to the Transaction (see proposed Am. Compl. ¶¶ 32);

    (e)  the Board failed to inform itself of reasonably available information regarding the value of Major's stock and "manipulated Major's financials," allegedly resulting in Major's stock being undervalued (see proposed Am. Compl. ¶¶ 33-36, 40, 43, 45).

See Proposed Am. Compl. (Dkt. No. 75-1).

To restate the obvious, Plaintiffs' allegations of a breach of fiduciary duties by Major's Board of Directors apply only to the members of that Board—and no one else.  Thus, to the extent that Plaintiffs seek to add as additional defendants Harold Bendell and Eric Keltz—neither of whom has ever been a member of Major's Board of Directors—that part of Plaintiffs' motion and proposed complaint is spurious and lacks any merit.

### A. Eric L. Keltz

Eric L. Keltz is Major's general counsel and corporate secretary.  Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 6:12-15).  In response to Plaintiffs' counsel's questions about his role as Major's secretary, Mr. Keltz explained his duties in that role as following:

> Q.  So what does that role of secretary entail?
> A.  For the most part, it is just really more about organizing and making sure that – especially years ago, that corporate formalities were honored, that they were recorded.  You know, that documents were being reviewed and signed by someone in a position of authority.

Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 53:13-19).

Accordingly, as Mr. Keltz testified, he attended the Board meetings in his capacity as Major's officer – a corporate secretary who "kept minutes of the board minutes."  Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 143:8-12).

In other words, Mr. Keltz is not a member of Major's Board of Directors and never was at any time period relevant to this litigation.  Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 53:9-12, 58:13-25), Ex. B (Def. Responses to Pl. Interrogatories, Response No. 11, p. 7).

Since Eric Keltz never served on Major's Board of Directors and attended the Board meetings in his capacity as a secretary to keep minutes of the Board meetings—which was consistent with and within the scope of his duties as an officer (i.e., corporate secretary)—any attempt to add him to this litigation is improper and frivolous.  Simply put, the proposed amended complaint lacks any allegations whatsoever that Mr. Keltz breached in any way his duties as Major's corporate secretary.

June 3, 2013
Page 4

### B. Harold Bendell

According to their proposed amended complaint, Plaintiffs attempt to join Harold Bendell in his capacity as "an officer of Major (the director of operations) and the brother of Bruce Bendell." Proposed Am. Compl. ¶ 14. Apparently referring to Eric Keltz's deposition testimony, Plaintiffs evidently confuse two separate and distinct meanings of the term "director" – i.e., a director as a managerial position (or title) and a director as a member of the Board of Directors (fiduciary position). As Mr. Keltz testified in response to Plaintiffs' counsel's questions about Major Chevrolet (one of Major's companies), Harold Bendell's position is clearly the former:

> … And it is basically run by Bruce and Harold Bendell, his brother. And Adam Cohen is sort of like a director of operations, I guess, or he and Harold are really the directors of operations in terms of the day to day there.[3]

Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 29:2-7).

While not knowing exactly whether Harold Bendell's position with Major is of an employee, Eric Keltz testified that Harold Bendell has a consulting or management agreement with Major Automotive. Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 30:15-31:16). When asked again by Plaintiffs' counsel about Harold Bendell's position, Mr. Keltz, once again, testified:

> Q. Now, then what is Harold's position at Major? You mentioned you report to him. What is his position?
> A. He is director of operations.
> Q. When did he assume that position?
> A. I don't know. Before my time.
> Q. So Harold, in addition to having his management arrangement with Major Chevy, is also an employee of Major Automotive?
> A. As I said before, I don't know if he is an employee or not. I don't look at how people's checks are distributed or what their being paid as.
> Q. You mentioned you were director of operations.
> A. I believe you asked me what his role was. In any case, he is involved with the day to day. How he gets paid for that or whether or not that's officially a job in the legal sense or it is a consulting agreement. I mean, *he is involved in the day to day and imports his expertise regarding the auto business to everybody there.*

Brodegaard Decl. ¶ 3, Ex. A (03/13/13 Keltz Dep. Tr. 45:10-46:9).

In fact, Harold Bendell's position—in terms of his expertise regarding the auto business and services to Major—has long been disclosed by Major and well known to Plaintiffs even

---

[3]/   Of course, if Plaintiffs truly believed that "a director of operations" here means a member of Major's Board of Directors, Mr. Adam Cohen—another "director of operations"—would have escaped the Plaintiffs' zealous, but specious, efforts to cure the deficiencies of their lawsuit by adding more defendants.

before they filed this lawsuit. According to the website printout of Major's filings prior to Major's deregistration with the Securities and Exchange Commission which was produced by Dorsey Gardner, one of two Plaintiffs in this case, Harold Bendell's position at Major was described as follows:

> *Key Employee*
>
> The following person, although not an executive officer or director, is regarded by us as a key employee:
>
> *Harold Bendell.* Mr. Bendell, age 56, has served as a senior executive of Major Dealer Group since December 1985. He, together with his brother, Bruce Bendell, is responsible for the day-to-day operations of the Major Dealer Group.

Brodegaard Decl. ¶ 3, Ex. C (DG0000046).

In short, Harold Bendell is not, and never was, a member of Major's Board of Directors. Thus, as it is the case with Eric Keltz, any attempt to add Harold Bendell as a defendant in this lawsuit based on allegations of fiduciary duties is improper and frivolous.

## II. As Detailed in Major's Memorandum of Law in Support of Its Pending Motion for Reconsideration, Plaintiffs' Only Claim of Breach of Fiduciary Duties Lacks Merit.

As explained in detail in Major's memorandum of law in support of its motion for reconsideration, Plaintiffs' remaining claim lacks merit and, as such, it should be dismissed. Plaintiffs' attempt to cure its defects by adding more defendants—and even by making outright misrepresentations—should fail.

The latter is best illustrated by the proposed amended complaint which, in fact, goes directly to the heart of Defendants' pending motion for reconsideration, in which they seek an order awarding judgment on the pleadings or dismissing the only remaining claim of breach of fiduciary duties. In Paragraph 51 of the proposed amended complaint, Plaintiffs allege:

> 51.     *The Trust sustained economic loss as an actual result of the material omissions from the Proxy. Specifically, by failing to disclose material information relating to the present fair value of Major's common stock, Defendants induced minority shareholders to vote for the Transaction and refrain from exercising their dissenters' rights and/or appraisal remedy.* The Trust, like other minority shareholders, sustained losses amounting to at least the difference between the price paid to cash out the minority shareholders ($0.44 per share) and the actual fair value of Major's common stock.

Dkt. No. 75-1 (Proposed Am. Compl. ¶ 51).

In other words, Plaintiffs allege <u>specifically</u> that: (1) as a result of the material omissions from the Proxy, <u>they were induced to vote for the Transaction and refrain from exercising their dissenters' rights and/or appraisal remedy.</u> Plaintiffs' allegations are directly belied by the evidence – e.g., documents produced by Gardner and Gardner's deposition testimony.

June 3, 2013
Page 6

With respect to the first part of Plaintiffs' claim—i.e., that they were induced to vote for the Transaction—Plaintiffs' counsel conceded in open court that Plaintiffs did not rely on the alleged misrepresentations and withdrew that part of their complaint. Brodegaard Decl. ¶ 3, Ex. D (08/21/12 Hrg. Tr. 7:12-8:9). And, the documents produced by Gardner further evidenced the fact—which also was admitted during Gardner's deposition—that the Trust did not rely and voted **against** the Transaction. Brodegaard Decl. ¶ 3, Ex. E (DG0000503, 507, 509), Ex. F (04/05/13 Gardner Dep. Tr. 34:24-25, 35:22-36:25). As Gardner testified, he did not rely on the Proxy when he cast his vote on behalf of the Trust against the Transaction:

> Q. *… Why did you vote against the proposition, sir?*
> A. *I believe the price was unfair and I had problems with the proxy.*
> Q. In the big picture sense, anything else?
> A. No.
> Q. *As we noticed from Exhibit 5, you voted against the transaction at 5 o'clock on the 24th of January, 2011?*
> A. *Yes.*
> Q. By that time you had determined that the price was unfair, correct?
> A. Yes.
> Q. *And by that time you had concluded that there were problems with the proxy, correct?*
> A. *Yes.*
> Q. Why did you think the price was unfair? I'm now talking as of the time you voted, sir.
> A. At the time I voted?
> Q. Yes. Why you thought it was unfair then?
> A. Because it was below what I thought the value might be.
> Q. And what did you think the value might be?
> A. I did not know.
> Q. Why did you think it was below the value that you thought it should be or might be?
> A. I thought that it would, you know, a fair market value analysis would bring a much higher price.
> Q. Why did you think that?
> A. *Based on years of experience as a security analyst.*
> Q. Had you looked at any documentation to come to this conclusion?
> A. Yes.

Brodegaard Decl. ¶ 3, Ex. F (04/05/13 Gardner Dep. Tr. 36:8-37:24) (emphases added).

In other words, this is not the case of an unsophisticated investor who did not understand the Proxy or relied in any way on the Proxy materials. Quite to the contrary, Gardner—who, according to his testimony, is an experienced security analyst—studied the Proxy, performed additional research, decided that the offered price did not reflect the fair price per share, and voted against the Transaction.

Similarly, the second part of Plaintiffs' claim—i.e., that they were induced to refrain from exercising their dissenters' rights and/or appraisal remedy—is blatantly false. Once again, Gardner testified:

June 3, 2013
Page 7

> **Q.** *At the time you voted against it, were you aware of the Nevada statute providing for dissenters' rights?*
> **A.** *Yes.*
> **Q.** At the time you voted against it, I assume you read the proxy?
> **A.** Yes.
> **Q.** In reading the proxy, did you come to any conclusion as to whether or not the transaction would be approved?
> **A.** I assumed it would be.
> **Q.** And why was that?
> **A.** Because Mr. Bendell owned more than 50 percent of the stock.
> **Q.** And as a result, even if all of the other shareholders voted against it, the transaction would go through, correct?
> **A.** Yes.
> **Q.** *Were you at that time aware that you had rights under the Nevada statute to assert a dissenter's claim if you believed you were not getting a fair price?*
> **A.** *Yes.*
> **Q.** *And how did you become aware of that?*
> **A.** *I read the proxy.*
> **Q.** Had you been familiar with dissenter rights provisions of Nevada prior to this?
> **A.** No.
> **Q.** Dissenters' rights of Delaware, for example, perhaps?
> **A.** States have different dissenters' rights and they have different rules.
> **Q.** *And it is your understanding that you must comply within the strict parameters of the rules to fit within the dissenters' rights statutes and avail yourself of those provisions, correct?*
> **A.** *Yes.*

Brodegaard Decl. ¶ 3, Ex. F (04/05/13 Gardner Dep. Tr. 38:8-39:23) (emphases added).

Once again, by the time Gardner voted against the Transaction—believing, as a result of studying the Proxy, that the offered price was unfair—Gardner was aware of the Nevada dissenters' rights statute which would have provided him with the appraisal remedy and knew that he needed to strictly comply with the statute to exercise his dissenters' rights. Indeed, Gardner sought his counsel's advice regarding his rights under Nevada dissenters' rights statute:

> **Q.** Interrogatory number 6 on the bottom of page 4 and carrying over to page 5, which reads: "*In connection with the transaction, did you ever consider exercising any rights you may have had under Nevada law regarding dissenters' rights?* If yes, describe in detail."
> MR. VARN:  Is there a question?
> **Q.** Yes, you could answer that question.
> **A.** *I consulted with my attorney and since it is outside of my area, I probably deferred to whatever his judgment was and assumed it was in my best interest to preserve my rights.*

Brodegaard Decl. ¶ 3, Ex. F (04/05/13 Gardner Dep. Tr. 153:14-154:4) (emphases added).

In other words, not only Gardner sought and obtained his counsel's advice with respect to his rights under Nevada dissenters' rights statute, he relied on his attorney's advice to preserve his rights. And, in fact, Gardner – via his counsel – did attempt to exercise his appraisal rights under Nevada dissenters' rights statute.

On January 25, 2011, Larry Varn, Esq. wrote to Major Automotive a letter on behalf of Gardner, informing Major of Gardner's and O'Brien's—as trustees of the Gardner Trust which they alleged to be *a holder of record* and beneficial owner of Major's stock—intent to exercise the appraisal remedy. Brodegaard Decl. ¶ 3, Ex. G (DG0000562, 01/25/11 Varn letter to Major).

By letter dated February 7, 2011, Eric Keltz, Esq., Major's in-house counsel, responded to Mr. Varn, advising him that "the Company has no record of the Trust's ownership of any shares of the Company's stock."[4] Brodegaard Decl. ¶ 3, Ex. H (DG0000554, 02/07/11 Keltz letter to Varn). In addition, Mr. Keltz again informed Plaintiffs' counsel about their rights under Nevada statute, advising him about the procedures to be followed and enclosing a copy of the statute with all necessary forms. Brodegaard Decl. ¶ 3, Ex. H (DG0000554-561, 02/07/11 Keltz letter to Varn w/encs.).

Rather than following the instructions and procedures established by the Nevada dissenters' rights statute, on March 7, 2011, Plaintiffs' counsel wrote a letter to Major, in which he included a laundry list of various document requests to be produced within 10 days. Brodegaard Decl. ¶ 3, Ex. I (DG0000528-530, 03/07/11 Varn letter to Major).

By letter dated March 9, 2011, Eric Keltz, Esq. responded to Plaintiffs' counsel, correctly pointing out that the Company had "provided all information required by applicable law" and would not respond to "further requests for information that the Company is under no obligation to provide." Brodegaard Decl. ¶ 3, Ex. J (DG0000523-524, 03/09/11 Keltz letter to Varn).

On March 10, 2011, Plaintiffs' counsel finally attempted to comply with the Nevada statute by sending to Major the Trust's Demand for Payment and, purportedly, Certificate and Consent of National Financial Services LLC as a record holder of Major's stock, as to which, by this time Plaintiffs recognized, the Trust was only a beneficial owner.[5] Brodegaard Decl. ¶ 3, Ex. K (DG0000532-534, 03/10/11 Varn letter to Major). However, that demand was defective – as a list of Major's shareholders as of December 10, 2010 reflects – neither the Trust, nor National Financial Services LLC was a holder of record of Major's stock on the record date. Brodegaard Decl. ¶ 3, Ex. L (MAJOR005000-03, Major's Shareholder List as of 12/23/10).

To summarize (as explained in full detail in Major's pending motion for reconsideration), Plaintiffs—who were fully aware of what they claim was the wrongful conduct but who failed to exercise their right to an independent judicial appraisal under Nevada law—should now be

---

[4] Neither the Trust, nor the trustees were holders of record on the record date of December 23, 2010. Brodegaard Decl. ¶ 3, Ex. L (MAJOR005000-03, Major's Shareholder List as of 12/23/10).

[5] Under Nevada dissenters' rights statute, a dissenting shareholder must timely submit a demand for payment and, in case of a beneficial owner (as it was apparently the case of the Trust), a certification/consent by the stockholder of record. N.R.S. 92A.440.

June 3, 2013
Page 9

barred from continuing this lawsuit, further wasting judicial resources and incurring more in legal fees and costs because they failed to comply with the Nevada dissenters' rights statute that specifically addresses dissenters' rights, provides for an appraisal remedy, and is the exclusive remedy under Nevada law.  N.R.S. 92A.380(2).

This is entirely consistent with the Nevada's highest court's decision in *Cohen v. Mirage Resorts, Inc.*, which stands for proposition that a shareholder is not precluded by the exclusivity provision of Nevada dissenters' rights statute if the shareholder did not have "full knowledge of wrongful conduct or reasons to challenge the validity of a merger" at the time of the transaction of question.  *Cohen*, 62 P.3d 720, 730 (Nev. 2003).  The rationale is to avoid the unjust result of precluding a shareholder from challenging the transaction where that shareholder did not have any knowledge or reason to know that there was something wrong about the transaction at the time when the transaction occurred.

Here, however, Plaintiffs maintained at all times that they did not believe that the offered price was fair and did not rely on the information provided in the Proxy.  In fact, based on the materials included in the Proxy as well as Gardner's own research and experience as a securities analyst, the Trust voted against the Transaction and attempted through its counsel to exercise the dissenters' right to appraisal—albeit deficiently—under Nevada law.

In other words, just like a personal injury plaintiff who failed to comply with a statute of limitations would forever be barred from bringing an action—however unjust and unfair that result might be—Plaintiffs in this case should not be allowed to avoid the consequences of their own negligence in failing to comply with the Nevada dissenters' rights statute when they were fully aware of what they now claim was the wrongful conduct but failed to properly exercise their right to an independent judicial appraisal as required by Nevada law.

In short, as evidenced by Plaintiffs' actions in the course of this litigation and their abuse of the discovery process, the proposed amendment is advanced purely for harassment and vexation and is nothing more than yet another attempt to advance their fishing expedition in a quest to remedy the Trust's failure to follow the procedure as required by the Nevada statute.

For the reasons stated above, Plaintiffs' proposed First Amended Complaint lacks any merit and will not survive a motion to dismiss or summary judgment.  Therefore, Plaintiffs' Motion for Leave to File a First Amended Complaint should be denied.

Respectfully submitted,

/s/ Robert F. Brodegaard
Robert F. Brodegaard (RB 7093)

cc:   Hon. Frederic Block (via ECF)
       Larry Varn, Esq. (via ECF and email)
       Mark B. Rosen, Esq. (via ECF and email)
       Ekaterina Schoenefeld (via ECF and email)