UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
DORSEY R. GARDNER, JOHN FRANCIS       :
O'BRIEN,                              :
                                      :
                Plaintiffs,      :     **MEMORANDUM AND ORDER**
                                      :     11 Civ. 1664 (FB) (VMS)
                -against-       :
                                      :
MAJOR AUTOMOBILE COMPANIES, INC.,     :
BRUCE BENDELL, ERIC L. KELTZ, STEVEN  :
HORNSTOCK, JEFFREY M. WEINER, ALAN    :
PEARSON, DAVID EDELSTEIN,             :
                                      :
                Defendants.      :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

       Plaintiffs Dorsey R. Gardner and John Francis O'Brien (collectively "Plaintiffs") have brought this action alleging, <u>inter alia</u>, breach of fiduciary duty against Defendants Major Automobile Companies, Inc. ("Major"); Bruce Bendell ("Bendell"); Eric L. Keltz ("Keltz"); Steven Hornstock ("Hornstock"); Jeffrey M. Weiner ("Weiner"); Alan Pearson ("Pearson"); and David Edelstein ("Edelstein") (hereinafter collectively "Defendants"). <u>Docket No. 1</u> (original); <u>Docket No. 120</u> (amended). In sum, Plaintiffs allege that Defendants improperly bought out Major's minority shareholders including Plaintiffs at an artificially low price (the "Transaction"). <u>Id.</u>

       Before the Court is Defendants' motion for an order quashing Plaintiffs' subpoena of Defendant Major's outside counsel Littman Krooks LLP's ("Littman") records and for a related protective order. <u>Docket Nos. 149, 152, 153</u>. The Parties dispute whether Littman can rightfully refuse to produce documents responsive to a subpoena on the basis of Defendant Major's attorney-client privilege because Plaintiffs believe that Defendant Major waived its privilege in

the records.[1]  Id.

The Court **grants** Defendants' motion for an order quashing Plaintiffs' Littman subpoena, and for a related protective order, because the Court finds that Defendant Major did not implicitly waive its privilege in the Littman documents for the following reasons.  Docket No. 149-1.

I.      **Factual Background**

The Court assumes the Parties' knowledge of the general facts underlying the litigation and will only summarize facts from Plaintiffs' amended complaint and discovery motion papers as relevant to the instant dispute.  See Docket Nos. 120, 149, 152, 153.

Plaintiffs are suing Defendants, which include a corporation and various officers of that corporation, for what Plaintiffs claim was an unfair buyout of minority shareholders, including Plaintiffs, at an artificially low price.  Docket No. 149-3.  In brief, Plaintiffs allege that Defendants sanctioned the Transaction even though they knew it was the product of an unfair share valuation process and unfair price, and thus unfair to the minority shareholders.  Id.

In March 2013, Plaintiffs deposed Defendant Keltz, who is Defendant Major's corporate secretary and general counsel.  Docket No. 149-1.  Defendant Major had designated Defendant Keltz as its Federal Rule of Civil Procedure ("FRCP") 30(b)(6) witness, and Defendants' counsel Robert F. Brodegaard ("RFB") attended.  Id.  According to Plaintiffs, during the deposition Defendant Keltz testified that the Board relied on Littman's advice in structuring the Transaction

---

[1] There are many documents on the docket addressing this issue because originally, the issue was raised by Defendants through a motion for a protective order, see Docket No. 76, and then by Plaintiffs through a motion for contempt and to compel, see Docket No. 97.  During a conference with the Court, the Parties agreed to withdraw those motions without prejudice to refiling.  Docket No. 128.  The practical effect of these withdrawals was that the Court can consider the privilege issue on one set of papers without the contempt motion.  See, e.g., Docket Nos. 76-77, 79-82, 95-98, 105-106, 108-110, 112-113.

and Plaintiffs believe that, as a result, Defendant Keltz waived Defendant Major's attorney-client privilege with Littman such that Plaintiffs may now subpoena formerly privileged discovery from Littman. Docket No. 149-3. In particular, Plaintiffs quote the following Defendant Keltz deposition testimony as material to their privilege-waiver claim. The first exchanges deal with the fairness of the valuation process:

> Q: Did the board ever consider appointing a special committee to evaluate [the Transaction]?
>
> A: My recollection of the events was that this was amongst some of the topics that were discussed with Mr. Littman, and we proceeded based on his advice.
>
> Q: Ultimately, was there a special committee appointed?
>
> A: No.
>
> Q: Is there a reason why a special committee was appointed for the transaction in 2006 but not appointed for this particular transaction?
>
> RFB: If it is possible for you to answer without disclosing attorney-client information, please try. But if you can't, I direct you not to answer.
>
> A: Both decisions were made as a result of our counsel.
>
> …
>
> A: To the best of my recollection, the board asked for Mr. Littman's counsel, received Mr. Littman's counsel on a variety of topics that this would engender and decided to go forward in the way that it went forward based on those conversations and that advice.
>
> …
>
> A: Again, I don't care to speculate what could have or maybe should have been done in someone else's opinion. We sought the advice of counsel and we followed the advice of counsel regarding any and all of these things.
>
> …

3

> Q: . . . Did anybody on [the] board ever voice any opposition to proceeding with this transaction?
>
> A: I don't specifically recollect the who's or the what's of exactly of whether or not there were people on both sides of it. I know that there were concerns about the transaction being one that was proper and legal. And, again, I guess I would have to refer back to the there were a multitude of conversations with Mr. Littman about the mechanics, the, quote unquote, right thing to do, the way by which it was going to be handled and sort of a—I think that they wanted—at the end of the day they wanted [Littman's] blessing on exactly how it was going to proceed regardless of how the mechanics of that took place.
>
> Q: As a result of those conversations there was no special committee appointed, but Major went out and retained Empire [Valuation Services, a valuation company,] to perform a valuation, correct?
>
> A: Yes.

Docket No. 149-4, Exh. B at 170-71, 173-74, 177-78, 184-85. The next exchanges deal with the issue of fair price:

> Q: Who ended up making the decision that you proceed with the April valuation and not engage in—excuse me, not commission another valuation?
>
> A: Ultimately, I believe, we sought the advice of counsel. And the content of that obviously it is what it is. But it was advised that that wasn't necessary.
>
> RFB: That's enough.
>
> …
>
> A: I don't know who made the specific decision, but I know the question had come up and the question was put to Mr. Littman.
>
> Q: If the decision had to be made by someone in management, would it have been [Defendant] Bruce [Bendell]?
>
> A: Again, I am speculating as to who. I really think it was one of those things that the decision was sort of—I think they really relied on the advice of counsel because I am sure that the question of timeliness of the valuation was discussed at that point in time

4

> given the delay in terms of our intention to get this done quite a bit sooner and what had ended up happening.
>
> …
>
> Q: So based on the advice of Mr. Littman, the board or Major determined it was okay to proceed with the valuation that was eight or so months old?
>
> A: Yes.

Id. at 202-03, 205-06.

On April 11, 2003, Plaintiffs served Littman with a subpoena for documents. Docket No. 98-1. Littman objected to the subpoena on the basis of attorney-client privilege and work-produce privilege. Docket No. 98-2. Plaintiffs responded to Littman, stating their belief that Defendant Major had waived the privilege by virtue of Defendant Keltz's deposition testimony. Docket No. 98-3.

## II.  Legal Standard[2]

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. U.S., 524 U.S. 399, 403 (1998). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v.

---

[2] District Judge Block has held that under New York's choice-of-law rules, Nevada law governs Plaintiffs' substantive claims against Defendants. Docket No. 48 at 5 ("Under New York's choice-of-law rules, the law of Nevada—Major's state of incorporation—governs the claim."). Based on the submissions on this privilege issue, the Parties are in apparent agreement that Second Circuit precedent and its progeny govern this privilege dispute insofar as this is the law that both Parties present to the Court in support of their positions. Docket Nos. 149-1, 149-3, 152, 153; see Safeco v. MES, No. 09 Civ. 3312 (ARR) (VMS) (E.D.N.Y. 2009), Docket No. 80 at 14 n.3 (the District Judge noting that the "briefs have not addressed which jurisdictional law governs, but have assumed [that New York law applies]. As such, New York law applies."). No Party requested the application of Nevada law. See Tartaglia v. Paul Revere Life Ins., 948 F. Supp. 325, 326-27 (S.D.N.Y. 1996). The Court thus applies the law of this Circuit to this dispute.

5

U.S., 449 U.S. 383, 389 (1981). "[T]he privilege applies when the client is a corporation." Id. (citing U.S. v. Louisville & Nashville R. Co., 236 U.S. 318, 336 (1915)).

"[R]ules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust" have been formulated with caution. In re Cty. of Erie, 546 F.3d 222, 228 (2008). "Courts have found waiver by implication" in three instances: (1) "when a client testifies concerning portions of the attorney-client communication"; (2) "when a client places the attorney-client relationship at issue"; and (3) "when a client asserts reliance on an attorney's advice as an element of a claim or defense . . . ." Id. (citing Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)). The Second Circuit has held that

> [u]nderlying any determination that a privilege should be forfeited is the notion of unfairness. This notion implicates only the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.

In re Cty. of Erie, 546 F.3d at 228. This focus on fairness has been codified in Federal Rule of Evidence 502(a), which provides that when disclosure of information is made to an adversary,

> waiver extends to . . . undisclosed . . . information . . . only if (1) the waiver is intentional; (2) the disclosed and undisclosed . . . information concern the same subject matter; and (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a); see Pall Corp. v. Cuno, Inc., 268 F.R.D. 167, 168 (E.D.N.Y. 2010) (stating that at-issue waiver is "typically found to have occurred when (1) the assertion of the privilege was the result of some affirmative act by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his claim or defense"). "Whether fairness requires disclosure has been decided by the courts on

6

a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000); see Fed. R. Evid. 502, Advisory Committee's Note (stating that Congress's intent in passing Rule of Evidence 502 was to establish that "a party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter").

As to the first species of privilege waiver, which occurs when a party selectively discloses otherwise privileged communications, "it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder." In re von Bulow, 828 F.2d 94, 102 (2d Cir. 1987). In order "to effectuate [such] a waiver, the selective disclosure must have occurred in an adversarial content, i.e., one that has the potential to cause legal prejudice to the proponent's adversary." Favors v. Cuomo, 285 F.R.D. 187, 198 (E.D.N.Y. 2012); see In re von Bulow, 828 F.2d at 102 ("[W]e hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice –does not waive the privilege as to the undisclosed portions of the communication."); see also In re Kidder Peabody Secs. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (finding a waiver where the defendant "invoked [an attorney-created investigative] report and its conclusions . . . both in judicial fora and in other judicial-type contexts).

A classic example of the second species of implied privilege waiver—"when a client places the attorney-client relationship at issue"—occurs in the context of a legal malpractice

7

action. Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) ("For example, where a claim of malpractice is premised upon reliance on the erroneous advice of predecessor counsel, under . . . federal law, the legal advice received from any other counsel on the same issue is placed at issue.").

Finally, as to the third species of implied privilege waiver, "[t]he key to a finding of waiver [when a client asserts reliance on an attorney's advice as an element of a claim or defense] is some showing by the party arguing for the waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." In re Cty. of Erie, 546 F.3d at 229; see U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (stating that the forfeiture of the privilege may result where the proponent of the privilege asserts a good faith belief in the lawfulness of its actions, even without invoking counsel's advice). Requiring a party opposing privilege to show that the privilege proponent intends to invoke reliance upon counsel as a claim or defense is important because if it were otherwise, i.e., if the mere fact of the privilege proponent's reliance on counsel were enough to waive the privilege implicitly, then "there would never be an enforceable privilege since the very point of the privilege is to enable clients to elicit and obtain (and presumably rely upon) the advice of their attorney." Bodega Investments, LLC ex rel. Kreisberg v. U.S., No. 08 Civ. 4065 (RMB) (MHD), 2009 WL 1456642, at *9 (S.D.N.Y. May 15, 2009). "The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege." In re Cty. of Erie, 546 F.3d at 229 (citing In re Kidder Peabody Secs. Litig., 168 F.R.D. at 470). "[I]t would be unfair for a party asserting contentions [of good faith or an advice-of-counsel defense] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." Favors, 285 F.R.D. at 199

(quotation & citation omitted).

## III. Discussion

The Parties agree that Defendant Major retained Littman and is the law firm's only client here for the purposes of privilege. Docket No. 149-3 at 1 ("Major—not the individual board members—retained Littman Krooks and is the law firm's only client for purposes of privilege"); Docket No. 149-1 ("Defendants respectfully submit this memorandum of law in support of their argument that Major holds the attorney-client privilege and that the privilege has not been waived"). The Court accepts this as true for the purposes of its analysis of whether Defendant Keltz had the authority to waive privilege on Defendant Major's behalf.[3]

Plaintiffs argue that Defendant Keltz's testimony waived Defendant Major's attorney-client privilege with Littman, first, because Defendant Keltz's testimony shows that Defendants "assert[] reliance on [Littman's] advice as an element of a claim or defense," and second, because Defendant Keltz "testifie[d] concerning portions of the attorney-client communication" such that Littman must now produce the remainder. Docket No. 149-3 (citing In re Cty. of Erie, 546 F.3d at 228).

---

[3] The Parties dispute whether Defendant Keltz, as Defendant Major's corporate secretary, general counsel and designated Rule 30(b)(6) witness, had the authority to assert or waiver the attorney-client privilege. Docket Nos. 149-1, 149-3, 152, 153. The Parties present their respective arguments in the context of language taken from two cases: Commodity Futures Trading Comm'n v. Weintraub, 449 U.S. 343, 348-49 (1985), and In re Grand Jury Proceedings, 219 F.3d 175, 184-85 (2d Cir. 2000). Docket Nos. 149-1, 149-3, 152, 153. The Parties do not offer the Court any lower court decisions applying specific facts analogous to the instant controversy to the general legal principles in Weintraub and In re Grand Jury Proceedings. The Court need not reach the question of whether Defendant Keltz was authorized to waive Defendant Major's privilege with Littman because the Court holds that even assuming, arguendo, that Defendant Keltz did have that authority, his deposition testimony does not demonstrate implied waiver.

### a. There Is No Implied Waiver Because Defendants Represent That They Will Not Assert Reliance On Littman's Advice As A Claim Or Defense (Or Element Of A Claim Or Defense)

In the Second Circuit, "[t]he key to a finding of implied waiver [on a theory that a client asserts reliance on an attorney's advice as an element of a claim or defense] is some showing that the party asserting the privilege is relying on privileged communications for a claim or defense or as an element of a claim or defense." In re Cty. of Erie, 546 F.3d at 228. Plaintiffs attempt to make this showing simply by pointing to Defendant Keltz's deposition testimony where, in response to Plaintiffs' questions regarding Defendant Major's decision-making process, he regularly referred to the fact of Defendant Major's consultations with Littman and reliance upon Littman's counsel. Docket No. 149-3. Defendants counter that whatever Defendant Keltz's deposition testimony, Defendants have no intention of asserting an advice-of-counsel defense or similar claim in this action such that Plaintiffs' allegation of an at-issue waiver is wrong. Docket No. 149-1 at 14. Instead, Defendants explain that Defendant "Major's defense here is that they did nothing wrong." Id.

In Swift Spindrift, Ltd. v. Alvada Ins., Inc., No. 09 Civ. 9342 (AJN) (FM), 2013 WL 3815970, at *6 (S.D.N.Y. July 24, 2013), the court stated that "[w]hile it is true that the assertion of an advice-of-counsel defense ordinarily results in an implied waiver of the privilege, [the party asserting privilege] has not raised that defense in this case. Indeed, [the party asserting privilege] has expressly disavowed that defense. Furthermore, should [the party asserting privilege] seek to change its position at a later date, it will risk having waived the defense.") (quotations & citations omitted). Defendants' representation regarding its approach to this litigation is integral to the resolution of this dispute, and the Court finds no implied privilege waiver here in light of Defendants' representation. A review of Defendants' answer to Plaintiffs'

10

First Amended Complaint corroborates Defendants' position. Docket No. 149-2 at 13-23. Defendants' representation in this case that they will make no reliance defense assures, as did the privilege proponent's representation in Swift Spindrift, that whatever Defendant Keltz's deposition testimony, Plaintiffs will not be disadvantaged before any factfinder by a lack of information relating to this topic. See In re Cty. of Erie, 546 F.3d at 226-29 (stating that despite defendants' deposition testimony revealing the fact that discussions had occurred with the county attorney's office, defendants did "not claim a good faith or state of mind defense." Given that "[t]hey maintain only that their actions were lawful or that any rights violated were not clearly established," "any legal advice rendered by the county attorney's office is irrelevant to any defense so far raised by [the defendants]."); CFIP Master Fund v. Citibank, 738 F. Supp. 2d 450, 474 n.27 (S.D.N.Y. 2010) (holding that the trustee's statement that it had conferred with counsel did not waive privilege where party specifically chose not to assert advice-of-counsel defense); Tr. of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 13 (D.D.C. 2010) (stating that "plaintiffs have not asserted a claim or a defense based on [counsel's] advice. . . . This is not a situation where a party is using a portion of privileged information for its own benefit to assert a claim or defense and withholding that which will hurt that claim or defense."); cf. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995) (finding that the defendant corporation had waived attorney-client privilege in its law firm's file after the defendant corporation had alleged that it relied on the law firm's advice about tax regulations because the defendant corporation "raised reliance on the attorney-client privilege . . . as an affirmative defense"); Adam Friedman Assocs. LLC v. Media G3, Inc., No. 10 Civ. 5350 (JPO), 2012 WL 1563942, at *5 (S.D.N.Y. 2012) (holding that the defendant had placed his attorney-client communications at issue and implicitly waived privilege relating to particular

11

subject matter when he claimed that the summary judgment entered against him should be vacated because his attorney never told him when the response in opposition was due).

Plaintiffs rely heavily upon In re Residential Capital, LLC, 491 B.R. 63, 71 (Bkrtcy. S.D.N.Y. 2013), which provides that "a party who argues that it made a business decision because of its reliance on counsel, regardless of whether it is asserted as a 'defense' to a 'due care' challenge, still waives its attorney-client privilege by placing its reliance on counsel directly at issue." Plaintiffs would almost have it that In re Residential Capital stands for the proposition that whenever a party breathes a word, in any context, that it relied upon counsel's advice, privilege is waived. Not only does this proposition go against the Second Circuit's at-issue waiver analysis in In re Cty. of Erie, this is not what In re Residential Capital holds. In In re Residential Capital, the defendant debtors agreed to a limited privilege waiver so that they could affirmatively use privileged documents to show that they had relied upon counsel in approving a contested settlement, and the court's cited language concluded that whether that constituted a defense to a due care challenge or not, the defendant debtors still waived privilege. Id. at 65. Here, Defendants do not make any claim of a limited waiver.

Plaintiffs observe that the In re Residential Capital case cites to U.S v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991), and Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 2009 WL 3111766, at *16 (S.D.N.Y. Sept. 28, 2009). These two cases also do not support Plaintiffs' argument. In Bilzerian, the court affirmed the district court's ruling that "if [the criminal defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal," and related attorney-client privilege would be waived. 926 F.2d at 1292. That holding is wholly consistent with the Court's interpretation of the instant case. Like the Bilzerian defendant, Defendants here have to make a choice, and Defendants have

12

chosen not to undertake a good-faith/advice-of-counsel defense. In Aristocrat Leisure, the intervening defendants wished to tell the jury the fact that they consulted with counsel, but they assured the court that they would not tell the jury that they relied upon privileged advice. 2009 WL 3111766, at *16. The Aristocrat Leisure court allowed the intervening defendants to adopt that approach without waiving privilege over the substance of that advice, holding that "[t]his case is not an instance where a party seeks to unfairly use its privilege as a sword and a shield by relying on advice provided by counsel while simultaneously refusing to disclose the full content of this advice to an adversary." Id. "Rather, because the [intervening defendants] are not claiming to have relied on an opinion of counsel, the actual content of the advice provided to the [intervening defendants] is irrelevant." Id. Similarly, in the instant case, where Defendants disclaim any intent to use reliance on Littman's advice as a defense, as noted above, Plaintiffs have not shown that they will be unfairly disadvantaged in litigating this case without the Littman information or documents.

In light of the foregoing, the Court finds that Defendant Keltz's deposition testimony did not implicitly waive Defendant Major's privilege vis-à-vis Littman. See In re Cty. of Erie, 546 F.3d at 228.

### b. Plaintiffs Have Not Shown That It Is Unfair Today That The Littman Materials Are Not Produced

The point that Plaintiffs are unable to show how they will be unfairly disadvantaged if the Court does not find implied waiver brings us to "the notion of fairness" which is so integral to at-issue privilege disputes. Bodega Investments, LLC ex rel. Kreisberg v. U.S., 2009 WL 1456642, at *6 (citing In re Cty. of Erie, 546 F.3d at 229). "More precisely, the court looks to the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying to its adversary access to privileged

13

material potentially capable of rebutting the assertion." In re Cty. of Erie, 546 F.3d at 228. Viewing this dispute through this lens, this Court cannot say that it is denying Plaintiffs anything that they will need to rebut Defendants, when Defendants state that they will not mention reliance upon counsel before any factfinder. See Gargano v. Metro-North, 222 F.R.D. 38, 41 (D. Conn. 2004) ("At this point in the litigation, no [presentation of privileged materials] has been made [before a jury], and plaintiff has not advanced any other arguments of finding a voluntary forfeiture [of privilege].").

Plaintiffs argue that it is irrelevant whether Defendants intend to themselves defend by stating that they were relying on Littman's advice because, according to Plaintiffs, their complaint is such that Defendants cannot avoid the question of good faith. Docket No. 149-3. Plaintiffs argue that their action against Defendants raises the question, whether Defendants like it or not, of whether "Defendants acted in good faith and in accordance with their fiduciary duties." Id. Assuming, for the sake of argument, that Plaintiffs are correct that their complaint would require Defendants to discuss their reliance upon Littman's counsel in defending themselves, Plaintiffs' argument is unavailing. As the court held in Chase Manhattan Bank N.A. v. Drysdale Secs. Corp., 587 F. Supp. 57, 58 (S.D.N.Y. 1984), a party cannot effectively force its adversary to waive its privilege implicitly with a pleading that brought the adversary's knowledge and good faith into issue, because "[t]hat would give an adversary who is a skillful pleader the ability to render the privilege a nullity." See Parker v. Prudential Ins., 900 F.2d 772, 776 n.3 (4th Cir. 1990) (finding that where an opponent injects attorney-client communications into the case, the privilege is not waived: "It was [the defendant], not [the plaintiff], who attempted to insert the advice of . . . counsel in to the proceedings.").

In light of the foregoing, the Court finds that Plaintiffs suffer no unfairness in litigating

14

this case at the moment of this writing that justifies the waiver of Defendant Major's privilege in the Littman materials.

### c. Defendant Keltz's Deposition Testimony Did Not Reveal Portions Of Attorney-Client Communication Such That Littman Must Now Produce The Remainder Of The Records

Plaintiffs also argue that because Defendant Keltz's deposition testimony revealed portions of attorney-client communications, Littman must now produce the remainder under the doctrine of "selective disclosure." See Docket No. 149-3; In re Cty. of Erie, 546 F.3d at 228; Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd., 212 F.R.D. 395, 398-99 (N.D. Ill. 2002) (holding that attorney-client privilege was waived where plaintiffs "selectively disclosed communications with their attorneys . . . in order to prove their claims"). Plaintiffs specifically mention Defendant Keltz's testimony in response to a question about who made a decision not to commission an updated valuation: "We sought the advice of counsel. And the content of that obviously is what it is. But it was advised that that wasn't necessary." Docket No. 149-3 (citing Docket No. 149-4, Exh. B at 202-03). At that moment, Defendants' counsel Mr. Brodegaard interjected, "That's enough."[4] Id.

The Court disagrees with Plaintiffs, and notes that its resolution of this aspect of the dispute is, as before, governed by Second Circuit law driven by "[f]airness considerations" and the question of whether the party asserting privilege "attempts to use the privilege both as 'a shield and a sword.'" In re Sims, 534 F.3d 117, 131-32 (2d Cir. 2008) (citing In re Grand Jury Proceedings, 219 F.3d at 182). Defendant Keltz made a partial disclosure of a confidential

---

[4] Plaintiffs allege that this is just one instance where Defendant Keltz selectively disclosed substantive advice from counsel. Docket No. 149-3. Plaintiffs do not provide the Court with any other example where this occurred. In any event, the Court believes, based on its own review of the deposition testimony flagged by Plaintiffs, that its analysis of this one cited example of "selective disclosure" would likely apply to any similar challenge from Plaintiffs.

15

conversation when he stated that Littman advised Defendant Major that it was not necessary to update a valuation, but this does not amount to a selective disclosure that requires an implied-waiver finding because, in order "to effectuate [such] a waiver, the selective disclosure must have occurred in an adversarial context, i.e., one that has the potential to cause legal prejudice to the proponent's adversary." Favors, 285 F.R.D. at 198. Here, Defendant Keltz's partial disclosure was made at deposition and not in front of a factfinder. For example, in John Doe Co. v. U.S., 350 F.3d 299, 306 (2d Cir. 2003), the Second Circuit reversed the district court's decision that the criminal defendant involuntarily waived privilege when its attorneys sent a letter memorandum to the government stating that the criminal defendant had had a good faith belief that his firearms transactions were in conformity with the law due to its attorneys' advice after the attorneys consulted with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). The government then subpoenaed the defendant's attorneys' notes from the ATF meetings, and the criminal defendant objected, claiming privilege. Id. The government responded that privilege had been waived by virtue of the letter. Id. The John Doe Co. court held that the letter was not selective disclosure of the sort that triggered implied privilege waiver because such waiver

> is premised on the unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim. Thus, in Bilzerian, because the legal advice the defendant in fact received might well have demonstrated the falsity of his claim to the jury about his belief, he could not fairly both assert testimony that implicitly communicated his version of the legal advice he received and simultaneously withhold disclosure of the legal advice he actually received.

Id. at 304 (emphasis in original). The Second Circuit then pointed out that, unlike in Bilzerian, [the criminal defendant in John Doe Co.] did not offer such testimony at a trial. It told no one of its claims but the [government] . . . . The government is in no way worse off as the result of its

16

receipt of [the criminal defendant's] letter than it would be if the Letter had never been delivered."  Id. at 305.

The Court finds John Doe Co. applicable here and finds that Defendant Keltz's statement to Plaintiffs in an extrajudicial context did not waive privilege under a selective disclosure theory.  See In re Cty. of Erie, 546 F.3d at 230 (finding that the defense counsel's objections on privilege grounds during the defendant county official's deposition testimony "properly terminated the inquiries when [the deponent] began to elaborate on the specifics of the advice received . . . and the principal substance of the attorney-client communications was not revealed"); cf. A&E Prods. Gr., L.P. v. Mainetti USA Inc., No. 01 Civ. 10820 (RPP), 2004 WL 895699, at *1 (S.D.N.Y. Apr. 27, 2004) (finding forfeiture of attorney-client privilege when the client testified at a hearing that he relied on his attorneys to tell him what information the law required him to report).  In Sanofi-Synthelabo v. Apotex Inc., 363 F. Supp. 2d 592, 595 (S.D.N.Y. 2005), the court similarly refused to find implied waiver, stating that a deponent's statement that he took action based on his outside counsel's advice was not made "to a decision maker, such as a judge or jury, while shielding other facts from that decision maker." Accordingly, the Sanofi-Synthelabo court found it dispositive, as this Court does here, that the deponent's assertion "does not run the risk that some independent decisionmaker will accept [the] respresentation[] without [his adversary] having adequate opportunity to rebut [it]."  Id. (noting that "[o]f equal importance [was] the fact that [the deponent's] statements were minimal, fleeting, and his words underscored his uncertainty").

In light of the foregoing, the Court finds that Defendant Keltz's deposition testimony did not implicitly waive Defendant Major's privilege relative to Littman under a selective-disclosure theory.

## IV. Conclusion

For the above-stated reasons, the Court **grants** Defendants' motion to quash the Littman subpoena. Docket No. 149-1.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2014

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge