```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
```
DORSEY R. GARDNER and JOHN
FRANCIS O'BRIEN, as trustees of the
DORSEY R. GARDNER 2002 TRUST,

                Plaintiffs,

  -against-                   **MEMORANDUM AND ORDER**
                                  No. 11-CV-1664 (FB) (VMS)

THE MAJOR AUTOMOTIVE
COMPANIES, INC., BRUCE
BENDELL, HAROLD BENDELL,
ERIC L. KELTZ, STEVEN
HORNSTOCK, JEFFREY M.
WEINER, ALAN PEARSON, and
DAVID EDELSTEIN,

                Defendants.
```
------------------------------------------------x
```

*Appearances*
*For the Plaintiffs:*                     *For Defendant Eric L. Keltz:*
LARRY L. VARN, ESQ.              ROBERT F. BRODEGAARD, ESQ.
MARK B. ROSEN, ESQ.              Brodegaard & Associates LLC
Pierce Atwood LLP                  110 East 59th Street, 23rd Floor
100 Summer Street, Suite 2250      New York, New York 10022
Boston, Massachusetts 02110

**BLOCK, Senior District Judge:**

      In 2011, Bruce Bendell, the majority shareholder the Major Automotive Companies, Inc. ("Major"), voted in favor of a 1-for-3,000,000 reverse stock split that made him Major's sole shareholder. Major's minority shareholders were offered forty cents per share.

Plaintiffs, the trustees of one of the former minority shareholders, claim that the offer price was unfairly low. They assert claims for breach of fiduciary duty against Bruce Bendell, two of Major's officers (Harold Bendell and Eric L. Keltz), and four members of its board of directors (Steven Hornstock, Jeffrey M. Weiner, Alan Pearson and David Edelstein). Jurisdiction is premised on diversity, and Nevada substantive law governs.

In prior memoranda and orders, the Court held that plaintiffs stated viable claims against Bruce Bendell, Harold Bendell and the four director defendants. *See Gardner v. Major Auto. Cos.*, 2012 WL 3614353 (E.D.N.Y. Aug. 21, 2012), *reh'g denied*, 2013 WL 3244822 (E.D.N.Y. June 29, 2013) (Bruce Bendell); *Gardner v. Major Auto. Cos.*, 2014 WL 4660850 (E.D.N.Y. Sept. 18, 2014) (Harold Bendell and director defendants). In lieu of moving to dismiss for failure to state a claim, the last defendant—Keltz—has moved for summary judgment. For the following reasons, his motion is denied.

## I

Keltz was Major's general counsel and corporate secretary. Apart from his formal titles, the parties sharply dispute Keltz's role in the challenged transaction. Accordingly, the Court must view the facts regarding Keltz's role "in the light most favorable to the non-moving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d

148, 157-58 (2d Cir. 2012). Viewing the record accordingly, the Court is constrained to deny summary judgment.

Keltz testified at his deposition that he was part of the collective decision-making that lead to the transaction. *See* Keltz Dep. 167 ("I am sure Bruce, Harold, the board, our outside counsel, myself, probably our accountants, probably all had conversations about it at various points in time."). More specifically, he testified that his was the "primary point person" working with Empire Valuation Consultants ("Empire"), the entity retained to assess Major's value and the resultant share price to offer its minority shareholders. Many of his tasks in that regard can fairly be described as information gathering:

> [Empire] had general questions about the corporate structure, some of the specifics of our ownership of a variety of assets. They wanted documentation of things like leases or any other kind of documentation of business relationships that they felt had bearing on the valuation, I suppose.
>
> And I guess the other thing that I provided was my interpretation or opinion of the current risk regarding legal affairs of the company as well.

*Id.* at 193-94.

In one important particular, however, Keltz's role was arguably more substantive. The key components of plaintiff's claim is that Empire evaluated Major based on outdated financial information. Empire asked for updated data, but "[m]anagement stated that none of this information was available at the Valuation

3

Date." Letter from Empire to Bruce Bendell and Keltz (Apr. 15, 2010) 16. Keltz's deposition testimony raises at least a reasonable inference that he was involved in the decision not to commission another evaluation based on more recent data:

> [Q. D]id you consider commissioning another valuation of the company at that point [i.e., the fall of 2010]?
>
> A. I am sure that was considered, but ultimately the problem, as most of us saw it, was there was this incredible uncertainty . . . . I think there were just concerns . . . that perhaps no matter what we did we might not be presenting material that would be accurate in a real sense.
>
> * * *
>
> Q. Who ended up making the decision that you proceed with the April valuation and . . . not commission another valuation?
>
> A. Ultimately, I believe, we sought the advice of counsel. And that content of that obviously is what it is. But it was advised that it wasn't necessary.

Keltz Dep. 200-03. Keltz's language is imprecise, and plaintiffs' counsel would be well-advised to demand more precise responses at trial. At this stage, however, any ambiguity as to who constituted the *we* that made the decision not to update the appraisal must be resolved in their favor.

In addition, an email sent to Keltz by the appraiser implies that Keltz had some input into the final offer-price decision. *See* Email from Anita Biondo to Keltz (Feb. 26, 2010) ("Once the # is set (meaning both [Empire] and you and Bruce are comfortable with it), it'll take me about a week to write the draft report, with another

4

week for review."). This evidence, too, suffers from imprecise language, but requires denying summary judgment.

**II**

Keltz argues that he, as Major's corporate secretary, did not owe any fiduciary duties to its minority shareholders. Although he is correct that the overwhelming majority of cases addressing the liability of corporate fiduciaries involve directors and majority shareholders, the Nevada Supreme Court has explicitly stated that minority shareholders may "allege that the merger was accomplished through the wrongful conduct of majority shareholders, directors, *or officers* of the corporation and attempt to hold those individuals liable for monetary damages under theories of breach of fiduciary duty or loyalty." *Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 727 (Nev. 2003) (emphasis added).

To be fair, there is some reason to treat directors and majority shareholders differently from corporate officers. The actions challenged by dissenting minority shareholders are invariably of a sort that requires approval by both the board of directors and the shareholders. Thus, the law is clear that those corporate decision-makers owe fiduciary duties in when voting on actions that will affect minority shareholders. *See, e.g., Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107, 109-10 (Del. 1952) ("Plaintiffs invoke the settled rule of law that Hilton as majority stockholder of

Mayflower and the Hilton directors as its nominees occupy, in relation to the minority, a fiduciary position in dealing with Mayflower's property.").

By contrast, corporate officers, though tasked with the day-to-day management of the corporation, do not necessarily play any decision-making role in the type of transactions at issue. It is entirely conceivable, for example, that a vice president in charge of sales would have no say in whether to merge with another company, issue new shares, or buy back and retire existing ones. The Court's research has revealed no case holding a corporate officer liable for breach of fiduciary duties to minority shareholders solely by virtue of his or her office.[1]

Nevertheless, the Court declines to entirely disregard the Nevada Supreme Court's unequivocal pronouncement. Instead, the Court surmises that a corporate officer may, under Nevada law, owe fiduciary duties to minority shareholders in the performance of duties affecting the challenged transaction. The Court finds support for this position in the connection drawn by the Nevada Supreme Court in *Cohen* between liability for breach of fiduciary duty and "wrongful conduct." 62 P.3d at 727.

---

[1]It is clear that corporate officers owe fiduciary duties *to the corporation and its stockholders as a whole*. *See, e.g., Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. Ch. 1939) ("Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders."). This action, however, is a direct action by minority shareholders, not a derivative action on behalf of the corporation.

6

At oral argument, Keltz's counsel objected that imposing fiduciary duties on anyone involved in the challenged transaction would conceivably extend liability to professionals outside the corporation—for example, the company hired to assess Major's value or even the lawyer hired to advise on the need for an updated assessment. The Court agrees that such a rule would cast too wide a net, but responds that the rule it discerns from *Cohen* is more limited. It is both a defendant's *status* as a corporate officer that creates the fiduciary duty to act with due concern for the interests of minority shareholders and his *actions* in connection with the challenged transaction—his alleged "wrongful conduct"—that will, if proven, establish a breach of his fiduciary duties to act with due concern for the interests of minority shareholders. The Court is satisfied that Nevada law appropriately imposes liability on those who meet those two criteria.

The Court agrees with Keltz that there is no evidence of wrongful conduct in the performance of many of his tasks regarding the reverse stock split. However, there is—as set forth above— some evidence that Keltz played a role in the decision not to update Major's financial data or seek an updated valuation and in approving the share price to be offered to minority shareholders. While the evidence is hardly

7

overwhelming, a factfinder could reasonably conclude that Keltz's role was motivated by something other than securing a fair price to Major's minority shareholders.[2]

Keltz posits that his actions in connection with the reverse stock split were not taken in his role as corporate secretary, but rather in his role as general counsel. As his counsel stressed at oral argument, general counsel is not one of Major's listed corporate offices. The Court declines to make such a formalistic distinction dispositive. It would be far too easy for corporate officers to avoid their fiduciary duties if they could simply claim that they performed their tasks while wearing a different hat. That is of particular concern where, as here, the tasks at issue are not obviously "legal" (or, for that matter, "secretarial" in nature).

Finally, Keltz argues that even if he is liable for breach of fiduciary duty, plaintiffs cannot prove causation because approval of the reverse stock split was a foregone conclusion in light of Bruce Bendell's intent to vote his majority share in favor of it. The Court addressed the same argument in one of the prior memoranda and orders:

---

[2]Plaintiffs argue that they are entitled to summary judgment because Keltz has failed to offer evidence that the transaction was fair. They are correct that Bruce Bendell was operating under a conflict of interest and that, in such circumstances, the defendant "bears the burden of proving [the transaction's] entire fairness." *Kahn v. Lynch Commc'ns Sys., Inc.*, 638 A.2d 1110, 1115 (Del.1994). However, because there is a question of fact as to Keltz's liability for breach of fiduciary duty, it is not possible to assign the ultimate burden of proof at the summary judgment stage.

> Harold Bendell argues that the complaint fails to plausibly allege causation. There is some merit to this argument because the complaint plainly places the lion's share of blame on Bruce Bendell, Major's controlling shareholder (and Harold's brother). Since Bruce Bendell's majority share was sufficient to guarantee approval of the buy-back, there is an argument to be made that he was the sole cause of the allegedly unfair price offered. Nevertheless, the complaint alleges that Harold participated in the scheme to undervalue Major and that is a viable aiding-and-abetting theory under Nevada Law[.]

*Gardner v. Major Auto. Cos.*, 2014 WL 4660850, at *3. The same conclusion applies here.

### III

For the foregoing reasons, Keltz's motion for summary judgment is denied.

**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 17, 2015